**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:08-CR-00283** |
| | : | |
| **v.** | : | **Chief Judge Kane** |
| | : | |
| **FRANK E. KLIMOVITZ** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Pending before the Court is Defendant Frank E. Klimovitz's motion for habeas corpus pursuant to 28 U.S.C. § 2255 (Doc. No. 33). The motion has been fully briefed and is ripe for disposition.[1] Because the Court finds that Defendant's counsel provided ineffective assistance by failing to object to the amount of loss included in the pre-sentence report, the Court will grant Defendant's habeas writ, vacate his sentence, and reopen his case for resentencing.

**I.      BACKGROUND**

**A.      Plea Agreement and Plea Hearing**

On July 15, 2008 a one count Information was filed against Defendant charging him with violating 18 U.S.C. § 1341. Specifically, Defendant was charged with defrauding his employer, Jaxxi Products and Design, via a fictitious product sales and invoice scheme from September 2007 to May 2008. (See Doc. No. 1.) On July 15, 2008, the Government filed a plea agreement with Defendant. (Doc. No. 3.) According to the agreement, Defendant would plead guilty to the one count. (Id. ¶ 1.) In addition, the first paragraph of the agreement stated that

---

[1] Also pending on the Court's docket sheet as Document Number 35 is a motion that is filed on the docket as "Motion to Appoint Expert, Motion to Amend/Correct Motion for Writ of Habeas Corpus." (Doc. No. 35.) However, the actual content of this filing appears to be identical to Defendant's motion for writ of habeas corpus (Doc. No. 33). Accordingly, the Court will strike the filing as duplicative.

> [t]he defendant further agrees that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to the defendant's conduct, including facts that support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximums provided for by law, <u>will be determined by the court after briefing, or a pre-sentence hearing, or at a sentencing hearing</u>.

(<u>Id.</u> (emphasis added).) Likewise, seventh paragraph of the agreement stated that "[t]he defendant and the government agree that the amount of the loss resulting from the defendant's actions will be determined by the Court at the sentencing hearing." (<u>Id.</u> ¶ 7.)

Defendant and the Government reached the plea agreement several weeks earlier, on June 27, 2008. (Doc. No. 33 ¶ 4.) During his negotiations with the Government, Defendant claims that he was told that "if I acted on paying full restitution, that they would recommend probation, along with my attorney [Gary Michak]." (Habeas Petition Tr. 10, May 8, 2009.) In line with this, a handwritten amendment was added to the twelfth paragraph of the plea agreement on September 2, 2008, the date of Defendant's plea hearing. (<u>Id.</u>) The handwritten amendment stated:

> If the Defendant pays $351,990 restitution at the time he enters his guilty plea, the Government agrees to join the Defendant in a motion for departure based upon extraordinary acceptance of responsibility and recommend probation at the time of sentencing.

(Doc. No. 11 ¶ 12.) The handwritten amendment was initialed by Defendant and by Kim Daniel, the Assistant United States Attorney. (<u>See id.</u>; Plea Hearing Tr. 11, Sept. 2, 2008.) At the plea hearing on September 2, 2008, during the Court's colloquy of Defendant, the Court asked Mr. Daniel to outline the essential terms of the plea agreement. (Plea Hearing Tr. 10, Sept. 2, 2008.) After reviewing the outline of the plea agreement, Mr. Daniel pointed to the handwritten amendment that had been inserted regarding the amount of restitution and the Government's

probation recommendation. (Id. at 10-11.) The following exchange occurred:

> MR. DANIEL: . . . And I would note that the original agreement, Your Honor, had no specific agreement as to the amount of the loss in this case, leaving such to the determination of the Court. But we've now reached an agreement on the amount of the loss, and Mr. Klimovitz has agreed to make this payment.

> BY THE COURT: . . . Mr. Klimovitz, at this point in the proceedings I'm always careful to advise defendants–and I especially want this to be so in your case–that any recommendation that the Government would make on your case is only that, a recommendation. Very often I will follow the recommendations of the Government, especially when they relate to credit for acceptance of responsibility or extra credit on sentencing that the Government might suggest is appropriate because of cooperation. Very often it's the Government who is in the best position to evaluate assistance that a defendant has given. . . .

> In a case such as this where the Government is making a more specific recommendation so that a person be credited with something under the guidelines, it's even more tenuous as to whether I would accept the Government's recommendation.

> I don't want you to plead guilty to this offense with the expectation that I will give you credit for extraordinary acceptance. I have not researched the issue, but I have some preliminary views as to whether or not extraordinary acceptance is appropriate or even allowed.

> I believe–maybe Mr. Daniel has researched it or Mr. Michak has–that the cases would suggest that the Court would be in error to credit a defendant with extraordinary acceptance for a restitution payment. I believe that is the state of the law. If that is the state of the law, I would not be inclined to give that credit.

(Plea Hearing Tr. 11-13, Sept. 2, 2008.) After discussing the agreement further with the attorneys, the Court resumed its colloquy of Defendant. The Court specifically explained to Defendant the specific penalties for the offense to which he was pleading guilty and that it was not bound by the Government's recommendation in sentencing him. (Id. at 17.) The following exchange occurred:

3

> [THE COURT]: . . . [N]o one knows what your sentence is going to be. The lawyers don't know, and I certainly don't know because I haven't seen the report yet, and I don't know what your guideline range is going to be. I certainly cannot tell you today whether I would be accepting the Government's recommendation in the case.
>
> If the Government does, indeed, recommend that you receive probation in the case, I may or may not think that appropriate, and I am not required to follow any recommendation that they offer to me. Do you understand that?
>
> [MR. KLIMOVITZ]: Yes.
>
> [THE COURT]: Do you have any questions about any of that?
>
> [MR. KLIMOVITZ]: No.
>
> [THE COURT]: Any questions at all for your lawyer or for me about the plea agreement that's been filed in the case?
>
> [MR. KLIMOVITZ]: No.
>
> [THE COURT]: Has anybody promised you what your sentence will be here?
>
> [MR. KLIMOVITZ]: No.
>
> [THE COURT]: Do you understand then that anything the Government offers is only that, a recommendation?
>
> [MR. KLIMOVITZ]: Yes.

(Plea Hearing Tr. 18-19, Sept. 2, 2008.) Defendant entered a plea of guilty pursuant to the plea agreement. (See Doc. No. 15.)

On December 11, 2008, the Probation Office submitted a pre-sentence report ("PSR"). (Doc. No. 33 ¶ 19.) The PSR listed a base offense level of seven and added twelve levels because of the loss of $351,990.75. (Id.) Following a three-level reduction for acceptance of responsibility and assistance to authorities, the PSR recommended a total offense level of

sixteen.  (Id. ¶ 20.)  With an offense level of sixteen and a criminal history category of I, the PSR

stated that the guideline imprisonment range was twenty-one to twenty-seven months.  (Id. ¶ 21.)

Because the lower end of the guideline range was not less than eight months, the PSR noted that

Defendant was ineligible for probation pursuant to U.S.S.G. § 5B1.1, application Note 2.  (Id. ¶

22.)  The PSR seemingly adjusted for this fact by altering the handwritten amendment in the plea

agreement, instead stating that "[t]he parties have agreed that if the defendant makes full

restitution, they will recommend that the Court depart below the applicable guidelines range for

'extraordinary acceptance of responsibility.'"  (PSR ¶ 81 (emphasis added); Doc. No. 41 at 8.)

### B.      February 24, 2009 Sentencing Hearing

On February 24, 2009, the Court held sentencing proceedings at which both Mr. Michak,

and Mr. Daniel emphasized their recommendation that Defendant be given probation in return

for his repayment of over $351,000.  (Sentencing Tr. 9-11, Feb. 24, 2009.)  The Court noted,

however, that it had "serious reservations about a sentence of probation given the amount of loss

[and] the unusual, cruel deception that was involved . . . ."  (Id. at 12.)   After conferring with the

probation officer, the Court noted its concern with the plea agreement, especially in regard to its

finding of extraordinary acceptance of responsibility.  (Id. at 13, 16.)  Specifically, the Court

stated that it was "not extraordinary for the defendant to meet his legal obligation to pay

restitution."  (Id. at 16.)  Addressing the Government's attorney, Mr. Daniel, the Court stated:

> Mr. Daniel, I, at this point, don't see any avenue except to sentence
> this man within the guideline range.  If the Government feels that
> he's entitled to withdraw his guilty plea or you want to have some
> further discussions, I'm happy to give you time to do that.  But I am
> not prepared to downwardly depart today based on extraordinary
> acceptance.  I see no basis for doing that.

(Id. at 17.)  In response, Mr. Daniel stated:

I understand the Court's concerns, but I would point out what I think does make this case different from the usual case is that this $350,000 wasn't in this defendant's pocket. He didn't have a job at the time he negotiated this plea agreement. He went out and borrowed it from family members. And he paid the money up front, which is unusual, or at least 93 percent of it prior to the entry of his plea. And I think that's not the usual norm chain of events in these cases. . . .

Nonetheless, if the Court feels unpersuaded that there's an appropriate basis [to downward depart], we understand the Court's position, and I would agree . . . that the defendant should be afforded the opportunity to withdraw his plea.

(Id. at 17-18.) Defense counsel then disputed how the actual amount in restitution that was due had been calculated. According to Mr. Michak, outside of calculated profits, Defendant was responsible for only $80,000 of loss in goods–but that Defendant had agreed to pay the $351,000 "to resolve this, to move forward . . . ." (Id. at 18-19.) The Government stated that the amount of $351,000 reflected the "actual out-of-pocket losses" suffered by the victim. (Id. at 20.) Mr. Michak again reiterated his belief that the loss should have been calculated at $80,000, that Defendant had cooperated substantially by paying restitution, and that the sentencing guidelines were advisory. (Id. at 21-23.) In response, the Court stated:

I totally accept that they're advisory. But I'm suggesting to you that based on what I have heard, I do not find a basis, nor even should I find a basis would I wish to depart significantly from the guidelines based on what I have heard about [Defendant]. And that's why I think that this calculation could be important.

If the restitution amount is what you represent, it first significantly affects his guideline range. The departure the Government is seeking would be not nearly so great if the guideline range were calculated based on $80,000 of restitution and not $351,000. That's why it's important for me to understand what the correct calculation is.

But I'm suggesting to you that based on everything I hear about this defendant, I do not believe he is probation-worthy. And I do not believe that I could lawfully find a basis for departure based on

> extraordinary acceptance, nor would I wish to do so, even should
> counsel point to me a legal basis for doing so.

(Id. at 23.)  The Court then asked Mr. Daniel how the Government wished to proceed.  (Id.)  Mr. Daniel responded that he thought "it would only be fair at this point to afford [Defendant] an opportunity to withdraw his . . . plea and plea agreement."  (Id. at 24.)  The Court allowed the sentencing hearing to be recessed to allow Defendant to confer with his counsel.  (Id.)  The Court noted that it would hold a conference with counsel, and would then re-calender the sentencing hearing after the conference.  (Id.)

On March 5, 2009, the Court held a status conference with Mr. Michak and Mr. Daniel. The conference was not attended by Defendant, nor was it held on the record.  Following the conference, Mr. Michak wrote his client a letter which stated:

> The Judge gave no indication as to whether she was going to grant
> the U.S. Attorney's recommendation and our motion for probation or
> whether she was going to order some form of incarceration.  She now
> understands she has the ability to do that and understands the
> Government's position that you have cooperated, as well as our
> argument in favor of probation.

(Habeas Petition Tr. 91, May 8, 2009.)  The letter further stated that "[t]he Court can reject this recommendation, as you know, and sentence you strictly by the guidelines."  (Id. at 92.)

**C.      March 17, 2009 Sentencing Hearing**

On March 17, 2009, Defendant was sentenced on the one count in the Information.  At the opening of the hearing, Mr. Daniel noted that defense counsel had filed no objections to the PSR that affected the calculation of the guideline range.  (Sentencing Tr. 2, Mar. 17, 2009.)  The following exchange then occurred:

> MR. MICHAK: Your Honor, we submitted to the Court a
> sentencing memorandum for a downward departure, a variance in this

matter. We had a conference prior to this to go over the cases that apply to the variance to allow the U.S. to recommend probation in this matter or vary from the guideline amounts, the guidelines in this case.

Again, the cases that affect directly are <u>Booker</u>, which indicates that the guidelines are guidelines, that they're not mandatory and the Court can depart from those guidelines. In addition, the three cases that were pointed out in the sentencing memorandum specifically go along with what Mr. Klimovitz did which the U.S. deemed as substantial cooperation and allowed them to recommend a variance. I believe that the U.S. is recommending some form of probation in this matter.

THE COURT: All right. Counsel, we've had some discussions about this off the record addressing the Government's commitments under the plea agreement, and, of course, we've had discussions here in court on the last occasion that this matter was scheduled for sentencing.

At that time Mr. Daniel did represent to the Court that the Government was standing by its promise to recommend probation. The suggestion at that time was that there would be probation with some condition of confinement. And, quite frankly, Mr. Daniel, I don't remember exactly what that recommendation was with regard to the confinement aspect. Would you refresh me on that.

MR. DANIEL: Your Honor, I don't believe we made a specific recommendation as to the length of confinement. I believe our recommendation is that the Court impose some sentence from Zone B in which a sentence of probation is authorized in Zone B. We're not making a specific recommendation as to either the length of the term of probation or incarceration.

(Sentencing Tr. 2-3, Mar. 17, 2009.) The Court asked Mr. Michak if his client chose to speak,

and Mr. Michak stated that he did not. (<u>Id.</u>) The Court then stated:

Counsel, just so we're all on the same page with regard to restitution, as the Government indicated during our telephone conference, the Government is still taking the position that the full restitution amount is owing, that the defendant has met his obligation to make restitution in the case by borrowing money from his sister and repaying the victim the full amount represented by the Government to be owed.

8

The defendant has done so even believing that the amount was considerably less than that, somewhere in the neighborhood of $80,000. It's based on that belief, although the Government believes that belief to be mistaken, that the Government suggests to the Court that the Court vary from the sentencing guidelines finding that the defendant has made extraordinary efforts at restitution and is, indeed, permitted to be credited for extraordinary acceptance of responsibility.

I find that difficult to reconcile logically because the Government is still taking the position that the full amount is owed, that the defendant was mistaken in his belief. But that is how I believe the issues are framed up.

(Id. at 3-4.) The Court then asked counsel whether they wished to add anything to the record, and both attorneys indicated that they did not. (Id. at 4.) The Court then proceeded to render its sentence, during which the Court stated:

Even by the defendant's calculation of loss, which is somewhere in the neighborhood of $80,000, the loss here is very substantial. In fact, if the defendant's own loss calculations were applied to the case–and they are not because he's not disputed the Government's loss calculations–his guideline range would be 12 to 18 months.

. . .

I believe that with or without the Government's recommendation, the Court has a number of options available, including a variance that would permit the Court to impose a sentence of probation. I do not believe that under all of the circumstances of this case, a sentence of probation is appropriate.

I, however, in consideration of the guideline range, do believe that a sentence of 21 to 27 months is in excess of that necessary to promote the goals of sentencing, and I am going to sentence the defendant outside the guideline range on that basis.

(Id. at 5-7.) As a result, the Court imposed a sentence of twelve months and one day, a $5000 fine, a $100 special assessment, and three years of supervised release. (Id. at 7.)

On April 6, 2009, Defendant submitted his § 2255 motion to vacate. (Doc. No. 33.) On April 8, 2009, the Court granted Defendant's motion to continue his voluntary surrender date pending resolution of the habeas petition. (See Doc. No. 37.) On May 8, 2009, the Court held a hearing on Defendant's motion.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct the prisoner's sentence. 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178 (1979)). "The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (citation omitted). Furthermore, § 2255 generally limits federal prisoners' ability to attack the validity of their sentences to four grounds. Hill v. United States, 368 U.S. 424, 426-27 (1962). A prisoner may claim relief by alleging that: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. Id. (citing 28 U.S.C. § 2255).

In order to survive, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires Defendant to

show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. (citation omitted). In this way, Defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. Under the second Strickland prong, Defendant "must demonstrate that he was prejudiced by counsel's errors." Jermyn, 266 F.3d at 282 (citation omitted). This prong requires Defendant to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694.) "Reasonable probability" is defined as "'a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

## III. DISCUSSION

Defendant's motion for habeas corpus is based on five different claims of ineffective assistance of counsel.[2] Specifically, Defendant argues that his counsel was ineffective by: (1) advising Defendant to sign a plea agreement without advising him that his base offense level would increase by twelve levels based on the amount of restitution; (2) advising Defendant that signing the plea agreement would allow for probation, even though such a sentence was impossible under the sentencing guidelines; (3) counseling Defendant to agree to a greater amount than was included in his Information; (4) failing to object to the PSR's finding that the loss amount was $351,990.75; (5) failing to request that the Court hold a sentencing hearing to

---

[2] The arguments raised by Defendant in his motion for writ of habeas corpus and his brief in support are framed slightly differently. (See Doc. No. 33, 41.) The Court will incorporate the arguments made in the brief in support in addressing Defendant's habeas writ.

determine the actual amount of loss to the victim; and (6) failing to provide Defendant with a copy of the PSR. (Doc. No. 33 ¶ 28; Doc. No. 41 at 22-24.) To summarize, the first three claims relate to the sentencing advice and calculations provided to Defendant by his counsel; the fourth and fifth claims deal with his counsel's failure to object to the amount of loss in the PSR; and the last claim deals with his counsel's alleged failure to provide him with a copy of the PSR. The Court will address each of these arguments under the <u>Strickland</u> framework.

## A. Failure to Provide Correct Sentencing Advice

Defendant's first basis of ineffective assistance is that his counsel convinced him to agree to pay $351,900 in restitution to the Government, in exchange for the Government's recommendation of probation.

Under the first <u>Strickland</u> prong, the Court is required to determine whether defense counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. <u>Jermyn</u>, 266 F.3d at 282 (citing <u>Strickland</u>, 466 U.S. at 688). Defendant maintains that he entered the guilty plea and paid the victim the sum of $351,000 based upon his belief–and his counsel's repeated assurances–that the restitution would make him eligible for probation. (Doc. No. 33 ¶¶ 13-14.) In return for his actions, Defendant asserts that "the Government [represented] that they would recommend a sentence of probation" but that these representations were "disingenuous in that they were aware at the time that agreeing to the loss amount of $351,099.75 would place the Defendant at a level which would be ineligible for probation."[3] (<u>Id.</u> ¶ 15.) Defendant states that without the guarantee of probation from Mr.

_____

[3] The Court notes that Defendant testified at his habeas hearing that he was not "guaranteed probation by Mr. Daniel," but he was guaranteed it by Mr. Michak. (Habeas Hearing Tr. 51, May 8, 2009.)

Michak, he would not have pled to the charges.  (Id. ¶ 16.)

The Court agrees with Defendant:  Mr. Michak's calculations and advice to his client fell below an objective reasonableness standard for counsel.  By agreeing to the loss amount of $351,099.75, Defendant was placed at a sentencing category where he was no longer eligible for a recommendation of probation.  Mr. Michak's advice to the contrary was deficient.

Although Defendant has established the first prong of Strickland on his first claim of ineffective assistance of counsel, he does not clear the second hurdle.  "The established general rule is that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel." Sepulveda v. United States, 69 F. Supp. 2d 633, 641 (D.N.J. 1999) (citing Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972) (citing Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970))); see also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (noting well-established precedent that "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion").  Here, at the plea hearing, the Court adequately explained to Defendant the maximum punishment he faced as a result of the charges against him and that the Court was not bound by the terms of the plea agreement.  Defendant responded to the Court's colloquy that he had not been guaranteed anything by the Government or by Mr. Michak.  Therefore, Defendant's claim based on the sentencing advice given to him by his counsel fails.  Accordingly, Defendant's habeas petition will be denied as to this claim of ineffective assistance.

### B. Failure to Object to Loss Amount in PSR

Defendant maintains that, while Mr. Michak gave him incorrect advice about whether he would be eligible for probation, Mr. Michak "had seven specific opportunities to recover from this error by placing a specific objection to the amount of loss." (Doc. No. 41 at 17.) Defendant argues that Mr. Michak could have objected to the amount of loss and demanded an evidentiary hearing (1) at the plea hearing, (2) after receiving the PSR, (3) in the first sentencing memorandum, (4) at the first sentencing on February 24, 2009, (5) at the conference of the parties before the Court on March 3, 2009, (5) in the filing of Defendant's second sentencing memorandum, or (6) at the second sentencing hearing on March 17, 2009. (Id. at 17-18.)

"'Where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance.'" United States v. Otero, 502 F.3d 331, 336 (3d Cir. 2007) (quoting Jansen v. United States, 369 F.3d 237, 244 (3d Cir. 2004)). Here, the difference in the amount of loss is a crucial element in determining the amount of sentencing exposure that Defendant faces under the sentencing guidelines.[4]  According to the

---

[4] In this case, the argument has been floated several times that the amount of restitution made by Petitioner may also be important in finding an extraordinary acceptance of responsibility. The argument goes that, because Defendant paid over $350,000 in restitution up front by borrowing the money from his own family members, this should weigh in favor of finding an extraordinary acceptance of responsibility. While the Court notes that there may be facts in this case demonstrating that Defendant has accepted responsibility for his offense and provided assistance to authorities, an acceptance of responsibility is certainly not "extraordinary" where a Defendant merely agrees to pay the amount that he rightfully owes. See United States v. Faulks, 143 F.3d 133, 138 (3d Cir. 1998) (agreeing with other circuits that have indicated that "the mere payment of restitution or mandated forfeitures cannot, in and of itself, be the basis for departing from the Guidelines"); see, e.g., United States v. Carlson, 498 F.3d 761, 765-66 (8th Cir. 2007) (noting that defendant's repayment efforts, including withdrawing $35,000 from his retirement accounts and borrowing $350,000 from two friends, failed to constitute a "sufficiently exceptional circumstance").

Information, Defendant gained $23,000 from his fraudulent actions. The amount of restitution calculated in the PSR is $351,990.75. (PSR ¶ 28.) Yet throughout these proceedings Defendant has maintained that the most he owed in restitution to the victim is $86,000, "based upon the difference between the Cost of Goods Sold and the amount paid by Kennys and Infinity Sales, Inc. for those goods and with reductions for insurance paid to the victim." (Doc. No. 33 ¶ 7.)

As demonstrated by the testimony of Drew Thompson, supervising probation officer for the pre-sentence unit in Harrisburg, because the amount of loss was calculated between $200,000 and $400,000, twelve levels were added under the sentencing guidelines. (Habeas Petition Tr. 61, May 8, 2009.) By adding the twelve-level increase to Defendant's base offense level of seven, Defendant was put at level nineteen. Even with a three-level reduction for acceptance of responsibility, Defendant would still be at level sixteen and face a recommended sentencing range of twenty-one to twenty-seven months. (Id. at 61-62.) However, had the loss been calculated between $70,000 and $120,000, only eight levels would be added under the guidelines. (Id. at 61.) In this alternate scenario, Defendant's base level of seven plus the eight-level increase would put Defendant at level fifteen. At that level, Defendant would be eligible for a two-level reduction for acceptance of responsibility, which could place him at a level thirteen and its recommended sentence range of twelve to eighteen months. (Id. at 62); see also U.S.S.G. §§ 2B1.1 & 3E1.1.

The Court finds that Mr. Michak's failure to object to the loss amount calculated in the PSR constituted deficient performance that fell below an objective standard of reasonableness under prevailing professional norms. See Jermyn, 266 F.3d at 282. The original plea agreement stated that in exchange for the restitution of over $351,000, the Government would recommend

probation.  When it became clear that the recommendation had been adjusted to comport with the sentencing guidelines, it was objectively unreasonable for counsel not to either seek that Defendant be released from the plea agreement or object to the amount of loss calculation in the PSR.  This was especially true given the fact that Defendant himself maintained throughout the proceedings that the most he owed in restitution to the victim was $86,000.  Cf. United States v. Gormley, 242 F. App'x 853, 855 (3d Cir. 2007) (unpublished opinion) (finding no ineffective assistance of counsel where defendant failed to contest the allegations of trading pornographic files recited by the Government at his plea hearing and in the PSR before his sentencing hearing).  Therefore, the Court finds that Defense counsel's performance was deficient and that he made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  Id.  Defendant has satisfied the first Strickland prong in his ineffective assistance claim.

Having satisfied the first Strickland prong, Defendant "must demonstrate that he was prejudiced by counsel's errors."  Jermyn, 266 F.3d at 282.  This prong requires Defendant to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland, 466 U.S. at 694.) "The prejudice prong is satisfied 'when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing–such as an automatic increase for a 'career' offender or an enhancement for use of a handgun during a felony–which would not have occurred but for counsel's error.'"  Otero, 502 F.3d at 337 (quoting United States v. Franks, 230 F.3d 811, 815 (5th Cir. 2000)) (further citations omitted).

Pursuant to the Federal Rules of Criminal Procedure, a defendant is afforded numerous

opportunities to object to the findings and recommendations in a PSR. United States v. Haywood, 155 F.3d 674, 679 (3d Cir. 1998) (citing Fed. R. Crim. Pro. 32(b)(6)(B)). In the present case, if defense counsel had objected to the loss calculation in the PSR, the Government would bear the burden of proving the amount of loss at the sentencing hearing. This scenario was contemplated in the plea agreement, yet defense counsel failed to make any such objection. Instead, the loss calculation amount of $351,000 went unchallenged. The Court finds that there is a reasonable probability that if counsel had objected the result would have been different. Indeed, if defense counsel had made an objection and the amount of loss was determined to be in the $70,000 to $120,000 range, Defendant would have faced only an eight-level enhancement rather than the twelve-level enhancement he received in the $200,000 to $400,000 loss range. Accordingly, defense counsel's failure to object and require that a hearing be held to develop a record as to the amount of loss constituted prejudice. See Jansen, 369 F.3d at 244 (finding prejudice where reduction in quantity of drugs attributed to defendant would have affected the computation of defendant's base offense level); cf. United States v. Bailey, 106 F. App'x 116, 117-118 (3d Cir. 2004) (unpublished opinion) (finding no prejudice where counsel failed to object to PSR loss amount where alleged error had "no impact whatsoever" on the district court's sentencing guideline calculation).

### C.    Failure to Provide Defendant with a Copy of the PSR

Defendant's final claim of ineffective assistance of counsel is that he was never provided with a copy of the PSR. Defendant testified at the habeas hearing that he never received a copy of the PSR and that Mr. Michak never discussed the twenty-one page report with him. (Habeas Petition Tr. 16, 22, May 8, 2009.) Defendant stated that he met with Mr. Michak on or about

October 22, 2008, in Wilkes-Barre, Pennsylvania, where the PSR was being prepared by Lisa Winheld, United States Probation Officer.  (Id. at 22-23.)  Defendant further stated that Mr. Michak told him after the meeting with Ms. Winheld that there would be a report due and that Defendant would have time to file objections.  (Id.)  However, Defendant claims that the first time he ever saw the PSR was a week after his sentencing when he met with Attorney Demetrius Fannick.  (Id. at 16.)

The Court is unpersuaded by Defendant's testimony that he never read or discussed the PSR prior to receiving it from Attorney Fannick.  While the Court recognizes that there was a question about whether Defendant was regularly receiving his mail,[5] the remaining evidence causes the Court to believe that Defendant was effectively advised of the contents of the PSR.

According to the habeas hearing testimony, the PSR was prepared by Ms. Winheld on October 27, 2008.  (Habeas Petition Tr. 22, May 8, 2009.)  The Government presented an exhibit dated November 3, 2008, which was a copy of a cover letter sent to Defendant from Mr. Michak indicating that the PSR was enclosed.  (Id. at 40.)  Defendant testified that he may have gotten the letter, but that he did not believe that he did.  Defendant further stated that even if he had gotten the letter, he did not receive the PSR "because there were many objections that I would have made to it."  (Id. at 41-42.)  However, Mr. Michak testified at the hearing that he went over both the PSR and its revised version with Defendant in their entirety.  Mr. Michak testified that his office received the PSR on October 29, 2008, that he dictated a letter to Defendant that day,

---

[5] The habeas hearing testimony indicated that the letters to Defendant were addressed to "Grandville Road" instead of "Grandville Drive," and that Defendant may have had problems with his mail being delivered to the wrong mailbox in his townhouse development.  (See Habeas Petition Tr. 40, 44, May 8, 2009.)

and that the letter appeared to have been sent to Defendant on November 3, 2008. (<u>Id.</u> at 84.)
Mr. Michak stated that he called Defendant "a couple days later to discuss the report, and we had
a lengthy phone conversation with regard to the report." (<u>Id.</u> at 84-85, 98.) Mr. Michak further
testified that Defendant told him that the only objection that he had with the report "was that it
did not include any language pertaining to the Government's agreement to do a recommendation
of probation." (<u>Id.</u> at 85.) As a result, Mr. Michak stated that he contacted the probation office
via fax and requested that the agreed upon language be included in the PSR. (<u>Id.</u>) Corroborating
Mr. Michak's recollection of this timeline was Mr. Thompson's testimony that, within the time
frame allowed for objections or clarifications to the PSR, Mr. Michak faxed a request for
clarification regarding the provision in the PSR dealing with the plea agreement. (<u>Id.</u> at 64.) Mr.
Michak testified that he sent the revised PSR to Defendant through regular mail on December
17, 2008, and that several days later they discussed it. (<u>Id.</u> at 88.)

  While the Court agrees with Defendant's current counsel that the better practice by Mr.
Michak would have been to require Defendant to sign a form acknowledging receipt and
agreement with the PSR, Defendant has failed to convince the Court that he did not receive a
copy of the PSR. Even if Defendant failed to receive the PSR, however, the Court finds that the
evidence shows that Mr. Michak went over the provisions in the PSR with Defendant. Any
prejudice that Defendant would have encountered by not actually receiving a copy of the report
was effectively expunged. As a result, Defendant's motion for habeas relief on grounds of his
failure to receive a copy of the PSR will be denied.

## IV. CONCLUSION

  Pursuant to <u>Strickland</u>, Defendant has made out a cognizable ineffective assistance of

counsel claim. Defendant was provided ineffective assistance of counsel when his attorney failed to object to the amount of loss included in the PSR. Therefore, the Court will grant the writ of habeas corpus and vacate Defendant's sentence. The Court will hold a hearing to resentence Defendant, at which the Government will bear the burden of presenting evidence as to the amount of loss for which Defendant is responsible. <u>See</u> 28 U.S.C. § 2255(b) ("If the court finds that . . . the sentence imposed was . . . open to collateral attack . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."). An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:08-CR-00283** |
| | : | |
| **v.** | : | **Chief Judge Kane** |
| | : | |
| **FRANK E. KLIMOVITZ** | : | |
| **Defendant** | : | |

<u>**ORDER**</u>

**AND NOW**, this 18th day of May 2010, it is **HEREBY ORDERED THAT**:

1.      Defendant Frank Klimovitz's motion for a writ of habeas corpus is **GRANTED** as to his claim that his counsel provided ineffective assistance of counsel by failing to object to the amount of loss in the pre-sentence report.

2.      Accordingly, Defendant's sentence is **VACATED**.  The Court will hold a new sentencing hearing at which the Government will bear the burden of establishing the amount of loss for which Defendant is responsible.  Sentencing shall be held on June 11, 2010, at 1:30 p.m. in Courtroom No. 4, Eighth Floor.

3.      The habeas petition is **DENIED** as to all other remaining claims of ineffective assistance of counsel.

4.      Defendant's "Motion to Appoint Expert, Motion to Amend/Correct Motion for Writ of Habeas Corpus," (Doc. No. 35), appears to be identical to Defendant's motion for writ of habeas corpus (Doc. No. 33).  Accordingly, Document 35 is **STRICKEN** as duplicative.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
